MAURICE H. BAKER, ROBERTA B. BAKER AND LAWRENCE, INC., APPELLANTS, *v.* W. A. SIMONDS, HARRY OEDEKERK AND KARAT, INC., A NEVADA CORPORATION, RESPONDENTS.

No. 4519

November 4, 1963                    386 P.2d 86

*Morton Galane; Hawkins, Cannon & Hawkins,* of Las Vegas, for Appellants.

*Jones, Wiener & Jones,* of Las Vegas, for Respondents W. A. Simonds and Harry Oedekerk.

*William Singleton* and *Rex A. Jemison,* of Las Vegas for Respondent Karat, Inc.

## OPINION

By the Court, THOMPSON, J.:

In the trial court Maurice and Roberta Baker obtained jury verdicts against the defendants Simonds and Oedekerk for $10,000 compensatory damages and against the defendant Karat, Inc. for $10,000 compensatory and $15,000 punitive damages.[1] The trial court granted each

---

[1]The Bakers' coplaintiff, Lawrence, Inc., a corporation wholly owned by them, was awarded nothing by the jury. One problem presented to us was the identity of the real party in interest, the Bakers or their corporation. Our disposition of the appeal makes it unnecessary to decide the question.

defendant's Rule 50(b) motion to set aside the verdicts and to direct entry of judgments in their favor. Additionally, that court ruled that, if its order directing the entry of judgments for the defendants, n.o.v., is reversed on appeal, a new trial should occur because of excessive damages. The Bakers appeal from the order setting aside the jury verdicts and directing the entry of judgments for the defendants. The validity of the conditional order granting a new trial is also questioned but need not be decided because of our conclusion that the lower court's rulings on the defendants' motions, n.o.v., were correct as a matter of law.[2]

The case below started out as one for declaratory relief. The Bakers sought a court declaration that they lawfully held possession of the Maurice Beauty Shop in the Royal Nevada Hotel as tenants under a five-year written lease dated December 10, 1954. The defendants were restrained from dispossessing them, pending court determination. However, in October 1960 (some 14 months after suit was started) the complexion of the case changed completely. At that time the Bakers abandoned their request that the court decide their disputed status as tenants under the mentioned written lease, advised the court that they had surrendered possession of the beauty shop, and asked court permission to file a supplemental complaint (NRCP 15(d)) requesting damages allegedly resulting from a course of conduct by the defendants since August 14, 1959 (the date suit was started), amounting to a constructive eviction. Permission was granted. The supplemental complaint was filed, and responsive pleadings received. The temporary restraining order (which had been extended by stipulation) was dissolved and bond exonerated. The cause thereafter proceeded to trial.

---

[2] Alternative motions under the federal counterpart of our Rule 50(b) is the subject of comment in 50 Yale L.J. 934. The federal rule was recently amended to require a conditional ruling on the motion for new trial, such as was done in the instant case. This court's advisory committee has suggested that our rule be changed to conform to the federal amendment.

When the lower court determined that the verdicts obtained by the Bakers should be set aside and judgments entered for the defendants, it necessarily found that a claim for relief had not been proved as a matter of law. There can be no doubt as to the correctness of its ruling as to the defendants Simonds and Oedekerk, for the record discloses that they had disposed of their ownership of the hotel before this litigation commenced. The acts constituting the claimed constructive eviction occurred after March 1959. Simonds and Oedekerk sold the hotel (in which the beauty shop was located) to Karat, Inc. on March 1, 1959. It is not alleged that they committed acts of constructive eviction. We can perceive no legal basis upon which Simonds and Oedekerk can be responsible to the Bakers for damages; and summarily affirm the lower court in so ruling without further comment.

Karat, Inc. was the sole landlord during the period of time in question. As to it the Bakers seek a reversal of the lower court's ruling and the reinstatement of the jury verdict, contending that substantial evidence was introduced to establish all essential elements of the cause of action of constructive eviction. We turn to discuss this central issue.

In general terms the eviction of a tenant may be either actual or constructive. A constructive eviction results from an active interference with, or disturbance of, the tenant's possession by the act of the landlord or someone acting under his authority, because of which the whole, or a substantial part, of the premises is rendered unfit for occupancy for the purpose for which it was demised. However, the tenant must elect to treat such interference as an eviction, and surrender the premises within a reasonable time. Veysey v. Moriyama, 184 Cal. 802, 195 P. 662, 20 A.L.R. 1363. There can be no constructive eviction if the tenant continues in possession, however much he may be disturbed in the

beneficial enjoyment. Palumbo v. Olympia Theatres, 276 Mass. 84, 176 N.E. 815, 75 A.L.R. 1111; cf. Schultz v. Provenzano, 69 Nev. 324, 251 P.2d 294; Annot., 91 A.L.R.2d 638. Thus it appears that in every case for damages, premised upon the claim of constructive eviction, the relevant inquiries concern the nature of the tenancy (whether for a fixed term or for an indefinite term with periodic rent reserved, etc.), an evaluation of the landlord's nontrespassory intrusion upon the tenants' possession, and whether possession was abandoned within a reasonable time after the occurrence of the acts complained about; and, of course, the extent of damage once the foundation for liability is found to exist. However, in the case before us, a discussion of these matters is not required. Much trial time was devoted to the kind of tenancy enjoyed by the Bakers.[3] Yet it seems to us that the record shows the absence of any landlord-tenant relationship between them and Karat, Inc., resting upon an agreement, express or implied, for many months before September 1960 when their possession of the beauty shop was abandoned. Absent such relationship at the time possession is surrendered, the remedy of damages for constructive eviction simply does not exist. Restatement, Torts § 822. A property right or privilege in respect to the use or enjoyment of the premises is essential.

---

[3]The master lease between Royal Nevada, Inc., lessor, and Royal Hotel, Inc., lessee, under which the Bakers claimed a sub-lease, was forfeited by federal bankruptcy proceedings in January 1956. In March 1956 Royal Nevada, Inc. gave a new lease of the entire premises to New Frontier. The Bakers continued in possession as month-to-month tenants. In July 1956 Royal Nevada, Inc. transferred the fee to Simonds and Oedekerk. In October 1956 the New Frontier lease was terminated. The Bakers remained in possession on a month-to-month basis. At this time Simonds and Oedekerk leased the entire hotel to Nevroy Corp., and in April 1957 Nevroy entered into an agreement with the Bakers labeled "sub-lease," which the Bakers argue to be a pro tanto assignment. In April 1958 the Eighth Judicial District Court forfeited the Simonds and Oedekerk to Nevroy lease. Whether the Bakers' sub-lease or assignment was abolished also, need not be decided. Assuming that it survived such court order, the Bakers' tenancy thereunder ran out October 31, 1959.

Here a suit asking the court to declare their status as tenants under an alleged written lease was commenced August 14, 1959. It was prompted by the Bakers' receipt of a notice to quit, given by Karat, Inc. If anything happened before August 14, 1959, giving them cause to sue Karat, Inc. for damages resulting from a constructive eviction, they waived any claim for such relief by electing to remain in possession and by seeking a court decree authorizing their continued possession. Abbott v. McCoy, 208 Okl. 224, 254 P.2d 997.[4] The written lease upon which the Bakers relied in asking a court declaration of their status and any extensions thereof, if valid at all, was to expire October 31, 1959, only two and a half months after suit was brought. The temporary restraining order secured at the inception of this litigation (and which, by stipulation, remained effective beyond the 15-day period prescribed by NRCP 65(b)) merely preserved the status quo pending court determination. Their possession of the beauty shop after October 31, 1959, though made secure by the restraining order, was not dignified thereby. The nature of their occupancy did not change. The record fails to disclose any agreement, express or implied, following October 31, 1959 as a foundation for their possession. Karat desired to dispossess them. Indeed there is no evidence that rent was accepted by Karat after that date.

In these circumstances the implication of a month-to-month tenancy after October 31, 1959 is not warranted. The Bakers did not hold possession for an indefinite term with monthly rental reserved. Cf. Proskey v. Colonial Hotel, 36 Nev. 76, 133 P. 390; Roberts v. District

---

[4] Two of the acts claimed to constitute a constructive eviction (locking of the main entrance and side door to Royal Nevada Hotel, thereby causing beauty shop patrons to enter the Stardust Hotel and on through a breezeway to the Royal Nevada Hotel, and the removal of signs from the locked doors indicating that patrons would have to enter through the main entrance of the Stardust to get to the beauty shop) occurred during the summer of 1959 *before* the Bakers' suit for declaratory relief was started.

Court, 43 Nev. 332, 185 P. 1067. Nor was their retention of possession a tenancy at will, for such a tenancy requires the landlord's consent to occupancy. Welk v. Bidwell, 136 Conn. 603, 73 A.2d 295. They were tenants at sufferance. This tenancy arises when one, who came into possession rightfully, continues in possession wrongfully after his right thereto has terminated. Restatement, Property § 22; Welk v. Bidwell, supra; Welch v. Rice, 61 Wyo. 511, 159 P.2d 502. In such capacity they remained in possession (by grace of the restraining order) until they voluntarily abandoned the beauty shop in September 1960.

It is this kind of possession (plus the unproved charge that in May 1960 Karat ordered the hotel switchboard to refer all calls for beautyshop service to the rival Stardust Beauty Shop, unless the patrons specifically requested the Maurice Beauty Shop)[5] that is the basis in fact for the supplemental complaint filed in October 1960 asserting a right to damages for a constructive eviction. A constructive eviction is not compatible with wrongful possession. Therefore we conclude that the lower court was right when it set aside the jury verdict and directed entry of judgment, n.o.v., for Karat.

One further comment: on appeal it was hinted that the evidence would support the jury verdict against Karat on a different theory than constructive eviction. Such theory is described as a suit for damages arising from the disturbance of Bakers' peaceable possession, even though unlawful, by means other than legal process. We do not decide whether such a theory for liability is recognized in the law. In this case it was an appellate innovation. It was not advanced by pleading or otherwise in the trial court. For that reason we decline to

---

[5] Not proved, because the evidence offered was hearsay if offered to prove the truth. Objection was interposed and sustained. The evidence then was received for another purpose, i.e., to establish the fact that certain phone calls were made, and not the truth of the conversation, and the jury was correctly instructed as to its use.

rule on it. Long v. Flanigan Warehouse Company, 79 Nev. 241, 382 P.2d 399; Clark County v. State, 65 Nev. 490, 199 P.2d 137.

Affirmed. A preliminary order as to costs incurred for preparation of the record on appeal (both sides having filed designations) was asked. We reserved ruling. We now rule that no costs are allowed to any party.

BADT, C. J., and McNAMEE, J., concur.